**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **VINCENT BRUNO** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-1887** |
| **MICHAEL STARR, ET AL.** | * | **SECTION C** |

**ORDER AND REASONS**

Before the Court are two Motions, filed respectively by Defendants Michael Starr and

Christopher Beary under Fed.R.Civ.P. 12(b)(6), for dismissal of the RICO claim brought by

Plaintiff Vincent Bruno.  (Rec. Doc. 13).    Having considered the motions, the oppositions

thereto, Plaintiff's Complaint and Response to the RICO Standing Order, and the law, the Court

hereby GRANTS Defendants' Motions.

**I.      Background**

This matter arises out of a dispute over the control of Delta Starr Broadcasting, L.L.C.

("Delta Starr"), a company whose main asset is a radio station in Thibadaux, Louisiana. A brief

description of the legal quarrel is that Bruno, a one-third interest holder in Delta Starr, opposed

the transfer of the company to Cajun Radio Corporation ("Cajun Radio"). This transaction was

initiated by Starr, who, at the time of sale, was allegedly a non-majority shareholder of Delta

Starr and its subsidiary, La Terr Broadcasting ("La Terr").[1]  Bruno makes a variety of claims that Starr and others engaged in a series of "schemes," including acts of mail fraud, to complete the transfer despite his opposition.   As far as Defendant Berry's role in the litigation, he advised Delta and La Terr in the transfer and represented the Starr defendants.

After contributing $350,000 in cash and signing off on a bank note for $400,000, Starr purchased the radio station KTIB in 2000, became the sole managing member and president of Delta Starr, and made Bruno a 50%  member.   Defendant Starr asserts that this corporate structure was established pursuant to the Delta Starr Operating Agreement, dated May 4, 2000.[2] In early 2003, Defendant asserts that due to financial necessity, Starr began marketing assets of Delta Starr (owner of the real estate) and La Terr (owner of the radio license and equipment) in order to pay off the principal of the bank note ($325,000).   Plaintiff asserts that as early as December 2004, Starr took steps to sell the radio station to Cajun Radio and executed an agreement to sell substantially all Delta Starr's assets without seeking consent from him as minority shareholder. Plaintiff further alleges that Starr provided no notice to him that he planned to enter into an agreement to sell the radio station to Cajun Radio.

At some point thereafter, Starr and Bruno executed on behalf of Delta Starr a loan of $44,000 from John Treen to keep La Terr financially afloat.   As a consequence of the loan, Treen was given a one-third interest in Delta Starr, with Starr and Bruno each retaining one-third

---

[1] The facts stated herein are taken from Plaintiffs' Complaint where clearly indicated (Rec. Doc. 13), and supplemented for purposes of coherence with facts taken from Defendant's Motion to Dismiss. (Rec. Doc. 17).

[2] While Defendants have not submitted a copy of the Operating Agreement, Plaintiff appears not to recognize its existence.

interests respectively.  The share distribution, according to Starr, prompted the formation of a new company, KTIB Broadcasting, L.L.C.  Plaintiff's briefing is silent as to these events.

On March 11, 2005, Treen transferred his one-third interest in Delta Starr to RMS Holdings, L.L.C. ("RMS"), a company created by Michael Starr, Ruth Starr, and W. Christopher Beary.  That same day, Michael Starr sent a letter via certified mail to Plaintiff, notifying him of a special members meeting of Delta Starr for the alleged purpose of ratifying past acts to authorize the sale of all of Delta Starr's assets and to elect a manager to serve the company.  On March 14, 2005, Michael Starr applied to the Federal Communications Commission ("FCC") for permission to transfer La Terr's radio license to Cajun Radio.[3]  On April 1, 2005, RMS transferred its one-third interest in Delta Starr to Michael Starr.

Plaintiff disputes the lawfulness of Starr's acquisition of Treen's one-third interestbecause of the alleged lack of notice of the special meeting of March 11 where Treen's interest was transferred to RMS, which eventuated in the ultimate acquisition of this one-third interest by Michael Starr through RMS on April 1.  With this transaction null and void, according to the Plaintiff, Michael Starr's decision to vote Delta Starr's 98% interest in La Terr without a majority vote of the membership, which replaced Plaintiff and Cvitanovich as the

---

[3]Apparently, the FCC initially dismissed the application to transfer the radio license from La Terr to Cajun Radio due to pending legal issues surrounding Delta Starr.  Richard Helmick also sent a letter to the FCC on May 11, 2005, requesting that the application for the transfer of the radio license be reconsidered, with copies to counsels for Plaintiff, Cvitanovich, Cajun Radio, and La Terr.  Subsequently, on June 22, 2005 the FCC ruled that Michael Starr had positive control of Delta Starr in regard to his application for the sale and transfer of the radio license.

directors and officers of La Terr, was without legal authority since Starr allegedly had only a one-third, and not a two-thirds interest in Delta Starr.[4]

In any event, after his decision to replace the directors, Michael Starr mailed a letter to Bruno and Cvitanovich, notifying them of the results of the meeting.  Plaintiff alleges that Starr committed mail fraud when he provided notification by mail on March 11, supposedly in an effort to seek ratification for the sale of assets and the change to remove Bruno and Cvitanovich as directors.  On April 5, 2005, Starr mailed out notification to Bruno and others that the Delta Starr assets would be transferred to Cajun Radio.   Plaintiff alleges that this action, too, constituted mail fraud because in that notification Starr illegitimately represented that he had authority to approve the transfer.[5]  Also arising out of this allegedly unlawful transfer, Plaintiff claims that the application to the FCC on March 14 was fraudulent because it represented that all members of Delta Starr and La Terr consented to the contracts of sale and FCC application when they in fact did not.  Use of the mail for the FCC application, containing the allegedly fraudulent misrepresentations, is thus another basis for mail fraud.

Finally, Plaintiff asserts that Starr received $25,000 from Cajun Radio as a deposit for the assets of Delta Starr (i.e. La Terr) in December 2004, despite the fact that the Asset Purchase Agreement, which would turn over complete broadcasting power from La Terr to Cajun Radio, pending FCC approval, was not executed by Michael Starr until April 1, 2005.  This agreement also permitted Cajun Radio, as well as Wilkins Communication Network, Inc. ("Wilkins

---

[4] Starr contends that he did have the legal authority because as owner of a controlling two-thirds interest in Delta Starr, he also controlled La Terr, of which Delta Starr owned 98%.

[5] Starr contends that the acquisition was legal because as the majority owner of Delta Starr, he was permitted to apply for the transfer, and that Plaintiff and Treen were aware that he was in the process of negotiating the sale of the radio station assets.

4

Communication") to be installed in the premises owned by Delta Starr that La Terr occupied, to the exclusion of Delta Starr and La Terr.

The transaction involving the sale of Delta Starr's assets has been the subject of previous litigation. Plaintiff filed a petition on behalf of Delta Starr in the United States Bankruptcy Court for the Eastern District of Louisiana on March 22, 2005, which was dismissed because Plaintiff did not have the authority to file the bankruptcy petition. Following this, Michael Starr sought to prevent Treen from voting the one-third interest he had sold to Delta Starr by filing a petition in the Civil District Court for the Parish of Orleans, State of Louisiana on April 5, 2005. The injunction was granted, which enjoined Treen from any attempts to vote the interest he sold until a trial on the merits. Starr then sent a letter to Plaintiff via certified mail notifying him of a special meeting of the members of Delta Starr where Michael Starr planned to vote the two-thirds membership interest in Delta Starr. Also on April 5, 2005, Plaintiff and Treen filed a petition requesting a temporary restraining order that would enjoin Michael Starr, RMS, and Cajun Radio from selling the assets of Delta Starr and La Terr as well as prevent Michael Starr from voting Treen's membership interest. A temporary restraining order was issued on April 6, 2005, but was dissolved by the trial court on April 7, 2005, holding Plaintiff and Treen responsible for damages and attorneys' fees. Finally, Plaintiff filed a racketeering petition in the 17th Judicial District for the Parish of LaFourche, which was removed to this Court due to preemption issues.

Following these events, Plaintiff filed this claim under 18 U.S.C. §§ 1962(a), (b), (c), Racketeering Influenced and Corrupt Organizations Act ("RICO"). Plaintiff alleges that Michael Starr, James Starr, Ruth Starr, RMS, W. Christopher Beary, Cajun Radio, Robert Wilkins, Wilkins Communication, and Greg Garrett, acting as RICO persons, committed

multiple predicate acts constituting a pattern of racketeering, purportedly over a period in excess of two years.  Plaintiff alleges that the predicate acts comprise five instances of mail fraud, conspiracy, and a violation of the Louisiana Theft Statute (L.S.A.-R.S. § 12:67).  In conclusion, Plaintiff alleges that the profits gained from the commission of the predicate acts were invested in an enterprise, constituting the same persons and entities as the RICO persons, in furtherance of a pattern of racketeering.

Defendants first contend that Plaintiff has no standing under RICO because he has not suffered any concrete economic harm.  Defendants also dispute that these acts were separate "schemes," characterizing the events instead as legitimate, with any separate corporate decisions amounting simply to a single, discrete transaction that cannot be the subject of a RICO claim.

## II.     Standard of Review

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *See Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993).  Unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim," the complaint should not be dismissed for failure to state a claim.  *Id.* at 284-285 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not defeat a motion to dismiss.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citing *Fernandez-Montes,* 987 F.2d at 284).

## III.    Discussion

In order to allege a cognizable claim under RICO, a plaintiff must : (1) plead a concrete injury, (2) establish a pattern of racketeering activity, (3) state sufficient predicate acts for a RICO complaint, (4) establish the existence of an enterprise, and (5) plead the requisites for an 18 U.S.C. § 1962 claim. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). Because the allegations fail to address a pattern of racketeering, it is unnecessary to address the other issues presented.

### A.    Pattern of Racketeering Activity/Continuity of Criminal Enterprise

"Racketeering activity" is defined under the statute in pertinent part as

> (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of Title 18, United States Code [including]: . . . section 1341(relating to mail fraud) [and] section 1343 (relating to wire fraud).

18 U.S.C. § 1961. "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *In re Mastercard Int'l Internet Gambling Litig.*, 313 F.3d 257, 261 (5th Cir. 2002) (internal citations omitted). "Establishing the minimum number of predicates, however, is not sufficient to establish a pattern. . . ." *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992). The Supreme Court in *H.J., Inc. v.Northwestern Bell Tel. Co.*, 492 U.S. 229, 241(1989), held that two or more predicate acts of racketeering activity that occurred within a single transaction and limited time-frame do not have the requisite continuity to create a "pattern" for purposes of RICO:

'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . It is, in either case, centrally a temporal concept -- and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with longterm criminal conduct.

*H.J. Inc.*, 492 U.S. at 241-242 (internal citations omitted).

Assuming *arguendo* under the Rule 12(b)(6) liberal standard that Defendants' actions surrounding Starr's acquisition were unlawful - *i.e.* because Starr somehow improperly used RMS to transfer a second one-third interest to himself without notice to Bruno - those actions are related solely to the transfer of Delta Starr's assets to Cajun Radio. Even if Starr was able to effectuate this transfer due to his allegedly illegitimate majority interest in Delta Starr, this would still only be a single transaction with no threat of future repetition. While Plaintiff makes vague allegations that Starr "planned to enter the contracts in question with Cajun Radio" as early as 2004 without informing Bruno (Rec. Doc. 13 at 1-2), his claim is still focused on the ultimate transaction. Furthermore, the specific alleged predicate acts all arose between March 11 and April 5, 2005. At the March 11 meeting Treen transferred his one-third interest to RMS. On March 14, Defendants made alleged misrepresentation to the FCC using the mail to apply for the radio license transfer. On April 5, Starr allegedly misrepresented his authority as a majority shareholder (as of the April 1 RMS-Starr transfer of the pivotal one-third interest) when notifying Bruno and others by mail that he had initiated the sale of Delta Starr to Cajun Radio. As in *H.J. Inc.*, the purported predicate acts of mail and wire fraud could not meet the

requirement of continuity because they extended at best "over a few weeks or months" and "threaten[ed] no future criminal conduct." *H.J. Inc.*, 492 U.S. at 242.   The Fifth Circuit has routinely invalidated RICO claims arising out of such temporally limited transactions which are not capable of repetition.[6]   This Court likewise finds that the predicate acts alleged by Plaintiff do not have the requisite continuity to amount to a pattern of racketeering activity that threatens future criminal activity.

**III.   Conclusion**

For the foregoing reasons, IT IS ORDERED that Starr's and Beary's Rule 12(b)(6) Motions be GRANTED, and that Plaintiff's RICO claims against all Defendants be DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 23rd day of August, 2005.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[6] *See*, *e.g.*, *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118 (5th Cir. 1996) (critical news broadcast about church containing alleged misrepresentations did not establish racketeering pattern); *In re Burzynski*, 989 F.2d 733 (5th Cir.1993) (affirming dismissal of RICO complaint arising out of a single, discrete transaction where doctor alleged that during the course of a lawsuit with an insurance company over payment of claims, the insurance company committed many fraudulent acts over months, including sending letters to other insurers to dissuade them from paying on the doctor's claims; creating a company to generate negative reviews of the doctor's methods of treatments; and "goading" government agencies into investigating the doctor); *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453 (5th Cir. 1991) (holding divorce was "completed" act and lacked RICO continuity where plaintiff-wife sued her former husband for depriving her of community property interest in a partnership in which he had been an active member); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241 (5th Cir.1988), cert. denied, 489 U.S. 1079 (1989) (finding no continuity or threat of future criminality in multiple acts of mail and wire fraud that "were part and parcel of a single, discrete and otherwise lawful commercial transaction").