**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VINCENT BRUNO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1887** |
| **MICHAEL STARR, ET AL.** | **SECTION C** |

**ORDER AND REASONS**

Before the Court are two a Motions for Sanctions (Rec. Doc. 60 and 61) filed, respectively, by Defendants Michael Starr, Ruth Starr, James Starr and RMS Holdings, L.C.C. ("Starr Defendants") and Defendant Christopher Beary ("Defendant Beary," collectively "Defendants") pursuant to Federal Rule of Civil Procedure 11. Having considered the motions, the oppositions thereto and the applicable law, Defendants' Motions are hereby **PARTIALLY GRANTED AND PARTIALLY DENIED**.

**I. Background**

Defendants filed this Rule 11 motion for sanctions in connection with a lawsuit that arose out of a dispute over the control of Delta Starr Broadcasting, L.L.C. ("Delta Starr"), a company whose main asset is a radio station in Thibadaux, Louisiana. A brief description of the legal quarrel is that Bruno, a one-third interest holder in Delta Starr, opposed the transfer of the company to Cajun Radio Corporation ("Cajun Radio"). This transaction was initiated by Starr, who, at the time of sale, was allegedly a non-majority shareholder of Delta Starr and its

subsidiary, La Terr Broadcasting ("La Terr").[1] Bruno makes a variety of claims that Starr and others engaged in a series of "schemes," including acts of mail fraud, to complete the transfer despite his opposition. As far as Defendant Beary's role in the litigation, he advised Delta and La Terr in the transfer and represented the Starr defendants.

After contributing $350,000 in cash and signing off on a bank note for $400,000, Starr purchased the radio station KTIB in 2000, became the sole managing member and president of Delta Starr, and made Bruno a 50% member. Starr asserts that this corporate structure was established pursuant to the Delta Starr Operating Agreement, dated May 4, 2000. In early 2003, Starr asserts that due to financial necessity, he began marketing assets of Delta Starr (owner of the real estate) and La Terr (owner of the radio license and equipment) in order to pay off the principal of the bank note ($325,000). Plaintiff asserts that as early as December 2004, Starr took steps to sell the radio station to Cajun Radio and executed an agreement to sell substantially all Delta Starr's assets without seeking consent from him as minority shareholder. Plaintiff further alleges that Starr provided no notice to him that he planned to enter into an agreement to sell the radio station to Cajun Radio.

At some point thereafter, Starr and Bruno executed on behalf of Delta Starr a loan of $44,000 from John Treen to keep La Terr financially afloat. As a consequence of the loan, Treen was given a one-third interest in Delta Starr, with Starr and Bruno each retaining one-third interests respectively. The share distribution, according to Starr, prompted the formation of a new company, KTIB Broadcasting, L.L.C. Plaintiff's briefing is silent as to these events.

---

[1] The facts stated herein are taken from Plaintiffs' Complaint where clearly indicated (Rec. Doc. 13), and supplemented for purposes of coherence with facts taken from Defendant's Motion to Dismiss. (Rec. Doc. 17).

On March 11, 2005, Treen transferred his one-third interest in Delta Starr to RMS Holdings, L.L.C. ("RMS"), a company created by Michael Starr, Ruth Starr, and W. Christopher Beary. That same day, Michael Starr sent a letter via certified mail to Plaintiff, notifying him of a special members meeting of Delta Starr for the alleged purpose of ratifying past acts to authorize the sale of all of Delta Starr's assets and to elect a manager to serve the company. On March 14, 2005, Michael Starr applied to the Federal Communications Commission ("FCC") for permission to transfer La Terr's radio license to Cajun Radio.[2] On April 1, 2005, RMS transferred its one-third interest in Delta Starr to Michael Starr.

In his lawsuit, Plaintiff disputed the lawfulness of Starr's acquisition of Treen's one-third interest because of the alleged lack of notice of the special meeting of March 11 where Treen's interest was transferred to RMS, which eventuated in the ultimate acquisition of this one-third interest by Michael Starr through RMS on April 1. With this transaction null and void, according to the Plaintiff, Michael Starr's decision to vote Delta Starr's 98% interest in La Terr without a majority vote of the membership, which replaced Plaintiff and Thomas Cvitanovich ("Cvtanovich") as the directors and officers of La Terr, was without legal authority since Starr allegedly had only a one-third, and not a two-thirds interest in Delta Starr.[3]

---

[2]Apparently, the FCC initially dismissed the application to transfer the radio license from La Terr to Cajun Radio due to pending legal issues surrounding Delta Starr. Richard Helmick also sent a letter to the FCC on May 11, 2005, requesting that the application for the transfer of the radio license be reconsidered, with copies to counsels for Plaintiff, Thomas Cvitanovich, Cajun Radio, and La Terr. Subsequently, on June 22, 2005 the FCC ruled that Michael Starr had positive control of Delta Starr in regard to his application for the sale and transfer of the radio license.

[3] Starr contends that he did have the legal authority because as owner of a controlling two-thirds interest in Delta Starr, he also controlled La Terr, of which Delta Starr owned 98%.

In any event, after his decision to replace the directors, Michael Starr mailed a letter to Bruno and Cvitanovich, notifying them of the results of the meeting. Plaintiff alleged that Starr committed mail fraud when he provided notification by mail on March 11, supposedly in an effort to seek ratification for the sale of assets and the change to remove Bruno and Cvitanovich as directors. On April 5, 2005, Starr mailed out notification to Bruno and others that the Delta Starr assets would be transferred to Cajun Radio. Plaintiff alleges that this action, too, constituted mail fraud because in that notification Starr illegitimately represented that he had authority to approve the transfer.[4] Also arising out of this allegedly unlawful transfer, Plaintiff claimed that the application to the FCC on March 14 was fraudulent because it represented that all members of Delta Starr and La Terr consented to the contracts of sale and FCC application when they in fact did not. Use of the mail for the FCC application, containing the allegedly fraudulent misrepresentations, was thus another basis for mail fraud.

Finally, Plaintiff asserted that Starr received $25,000 from Cajun Radio as a deposit for the assets of Delta Starr (i.e. La Terr) in December 2004, despite the fact that the Asset Purchase Agreement, which would turn over complete broadcasting power from La Terr to Cajun Radio, pending FCC approval, was not executed by Michael Starr until April 1, 2005. This agreement also permitted Cajun Radio, as well as Wilkins Communication Network, Inc. ("Wilkins Communication") to be installed in the premises owned by Delta Starr that La Terr occupied, to the exclusion of Delta Starr and La Terr.

[4] Starr contends that the acquisition was legal because as the majority owner of Delta Starr, he was permitted to apply for the transfer, and that Plaintiff and Treen were aware that he was in the process of negotiating the sale of the radio station assets.

The transaction involving the sale of Delta Starr's assets was also the subject of previous litigation. Plaintiff filed a petition on behalf of Delta Starr in the United States Bankruptcy Court for the Eastern District of Louisiana on March 22, 2005, which was dismissed because Plaintiff did not have the authority to file the bankruptcy petition. Following this, Michael Starr sought to prevent Treen from voting the one-third interest he had sold to Delta Starr by filing a petition in the Civil District Court for the Parish of Orleans, State of Louisiana on April 5, 2005. The injunction was granted, which enjoined Treen from any attempts to vote the interest he sold until a trial on the merits. Starr then sent a letter to Plaintiff via certified mail notifying him of a special meeting of the members of Delta Starr where Michael Starr planned to vote the two-thirds membership interest in Delta Starr. Also on April 5, 2005, Plaintiff and Treen filed a petition requesting a temporary restraining order that would enjoin Michael Starr, RMS, and Cajun Radio from selling the assets of Delta Starr and La Terr as well as prevent Michael Starr from voting Treen's membership interest. A temporary restraining order was issued on April 6, 2005, but was dissolved by the trial court on April 7, 2005, holding Plaintiff and Treen responsible for damages and attorneys' fees. Finally, Plaintiff filed a racketeering petition in the 17th Judicial District for the Parish of LaFourche, which was removed to this Court due to preemption issues.

Following these events, Plaintiff filed this lawsuit under 18 U.S.C. §§ 1962(a), (b), (c), Racketeering Influenced and Corrupt Organizations Act ("RICO"). Plaintiff alleged that Michael Starr, James Starr, Ruth Starr, RMS, W. Christopher Beary, Cajun Radio, Robert Wilkins, Wilkins Communication, and Greg Garrett, acting as RICO persons, committed multiple predicate acts constituting a pattern of racketeering, purportedly over a period in excess of two years. Plaintiff also alleged that the predicate acts comprise five instances of mail fraud,

conspiracy, and a violation of the Louisiana Theft Statute (L.S.A.-R.S. § 12:67). Defendants countered this argument by asserting that the Plaintiff lacked standing under RICO, because he has not suffered any concrete economic harm and that there was no ongoing scheme as required by RICO.

This Court granted Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), finding that there was no pattern of activity such as to sustain a RICO claim. Plaintiff appealed that ruling. The Fifth Circuit Court of Appeals affirmed this Court's decision, because "Bruno's claims as plead are clearly foreclosed by this court's precedent. *Bruno v. Starr, et. al*, 2006 WL 1307570 *1 (5th Cir. 2006). As a result, Defendants filed this motion for sanctions pursuant to Rule 11, for the filing of this suit, alleging that Bruno and his attorney, Anatole J. Plaisance ("Plaisance") did not have a legal basis for the RICO claims and that they filed the suit for an improper purpose.[5]

**II. Analysis**

Federal Rule of Civil Procedure 11 provides that when a lawyer submits a pleading to the court, the lawyer certifies that any representations made to the court are not being presented for any improper purpose, that the legal contentions are warranted by existing law or a good faith argument for the modification or reversal of the law, and any allegations made therein have evidentiary support. If a motion is filed in violation of Rule 11, the district court may impose sanctions, such as, non-monetary directives, payment of a penalty to the court or reasonable

[5] Defendants complied with Rule 11 by serving a copy of the motion for sanctions on the offending party and giving them at lest twenty-one (21) days in which to withdraw the challenged pleadings.

attorneys' fees and costs incurred as a result of the violation. FED. R. CIV. P. 11. The goals of imposing sanctions under Rule 11 are deterrence, punishment and compensation. Id.

In their motions for sanctions, Defendants allege that sanctions are appropriate because the Plaisance filed the RICO suit without first conducting a proper investigation regarding the applicable law. Defendants contend that Plaisance ignored the Fifth Circuit's precedent that precludes bringing RICO charges when there is no possibility of repetition of the allegedly harmful actions. Defendants also claim that Bruno and Plaisance filed the RICO suit for improper motives. According to Defendants, the filing of multiple lawsuits concerning the same facts demonstrates an intent to harass.

Bruno and Plaisance oppose the imposition of sanctions. First they argue that this court lacks jurisdiction to hear the Rule 11 motion because the appellate court did not remand for further proceedings. Secondly, Plaisance asserts that he spent "a number or days" investigating the RICO claims and determined that there was continuing activity such as to support a RICO claim.

Contrary to Plaintiff's argument, this Court does have jurisdiction to consider Defendants' motions for sanctions. A district court does not lose jurisdiction to hear Rule 11 motions after appellate court review even if the appellate court does not remand for further proceedings. District courts will entertain such a motion made after appellate review. *See, Krim v. Banctexas Group, Inc.*, 99 F. 3d 775 (5th Cir. 1996), *Krim v. Banctexas Group, Inc.*, 989 F. 2d 1435 (5th Cir. 1993). Furthermore, the Court's grant of leave to re-file in its denial of the Starr Defendants' first motion for sanctions (Rec. Doc. 56) in no way impacts Defendant Beary's ability to request sanctions under Rule 11. The Court only mentioned leave to re-file because the

motion was dismissed without prejudice. This language should not be construed as precluding other defendants from making similar motions.

This Court is acutely concerned with the interaction of Rule 11 and RICO. Rule 11 requires that any factual claim made have evidentiary support, which is particularly compelling when a claim, such as RICO, alleges criminal conduct. *5-Star Premium Finance, Inc. v. Wood*, 2000 WL 533941 (E. D. La. 2000). Furthermore, the Fifth Circuit views an attorney's duty under Rule 11 as particularly important in RICO cases. There is a greater possibility of abuse and, as a result, the Court places a heightened responsibility on attorneys to inquire into the factual and legal bases of potential claims or defense prior to bringing such suit or risk sanctions for failing to do so. *Chapman & Cole v. Itel Containder Int'l B.V.*, 865 F2d 676, 685 (5th Cir. 1989); *Smith v. Our Lady of the Lake Hospital*, 960 F.2d 439, 444 (5th Cir. 1992); *Moore v. Astra Pharmaceutical Products, Inc*., 1992 WL 245678 (E. D. La. 1992).

In this Rule 11 motion, Defendants allege that Plaisance did not make a reasonable inquiry into the applicable law. To determine the reasonableness of a legal inquiry, the Court considers the time available to the attorney, the plausibility of the legal view contained in the document, the pro se status of the litigant and the complexity of the legal and factual issues raised. *Smith* 960 F.2d at 444, *citing, Thomas v. Capital Security Services, Inc.,* 836 F. 2d 866, 875-76 (5th Cir. 1988). Here, the plaintiff is not a pro se litigant and RICO law is very complex. However, the legal views contained in Plaisance's pleadings are not plausible in light of the Fifth Circuit's RICO precedents. In its opinion affirming this Court's decision regarding the Defendants' motion to dismiss, the Fifth Circuit said that "Bruno's claims as plead are clearly foreclosed by [its] precedent," because there was no pleading of continuity. *Bruno v. Starr,* 2006 WL 1307570 (5th Cir. 2006).

Since the RICO claims were so “clearly foreclosed” by Fifth Circuit precedent, Plaisance likely put little effort into researching the applicable law. To avoid sanctions, an attorney must conduct a reasonable inquiry into the relevant law. *Smith,* 960 F.2d at 444. The imposition of Rule 11 sanctions for inadequate legal support for a claim is based on a standard of objective reasonableness under the circumstances, not the attorney’s good faith belief that there is proper legal support for the claim. *Smith*, 960 F. 2d at 440. A reasonable inquiry certainly would reveal long standing precedent. Failure to find such clearly applicable law and/or not even mention or try to distinguish it points to a lack of effort on the part of Plaisance in verifying that the RICO claims were well grounded in the law. Thus, he violated Rule 11.

Defendants also allege that Plaintiff and his attorney filed the RICO claims for an improper purpose. Plaintiff filed no less than five suits for claims arising out of the same transaction. Plaintiff was denied relief by all courts and one ordered him to pay damages and attorney’s fees for improperly causing a temporary restraining order to be issued. Due to this pattern of harassment by asserting claims that lack legal basis, this Court concludes that the RICO claims were brought for an improper purpose in violation of Rule 11.

Once a district court finds a Rule 11 violation, it must impose some sanctions. *Thomas*, 836 F. 2d at 876. The Court has broad discretion in determining the appropriate sanction, but the sanction imposted must further the purpose of Rule 11, i.e. it must deter, punish and compensate. *Id.* at 876-78. An appropriate sanction may be expenses and attorneys’ fees to the extent that these expenses were reasonably caused by the Rule 11 violation. *Id.* at 878. However, a party seeking these damages must mitigate expenses, by correlating his response, in hours and funds expended, to the merit of the claims. *Id.* at 879. Moreover, such costs and expenses need not be awarded at all. *Id.* The sanctions can be awarded jointly and severally against the client and his

attorney. *Willy v. Costal Corp*., 855 F.2ds 1160, 1173-74, *citing, Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1131 (5th Cir. 1987), and; *Southern Leasing Partners Ltd. v. McMullan*, 801 F.2d 783, 789 (5th Cir. 1986).

Here, the Defendants suggest that attorneys' fees are appropriate sanctions. The Starr Defendants provide invoices which show that their attorneys' fees in connection with the RICO suit total $21,026.25. Similarly, Defendant Beary's attorneys submitted invoices which show that their fees in connection with the RICO suit were $14,182.61. Together, Defendants are asking for sanctions totaling $35,208.86. This is excessive, especially considering that most of the motions and memoranda that were filed by both the Starr Defendants and Defendant Beary were nearly identical and that this Court dismissed the case on a Rule 12(b) motion. Although sanctions are appropriate, awarding this amount of attorneys' fees is not. Instead, both Mr. Bruno and Mr. Plaisance are ordered to pay $7,000 in attorneys fees to the Starr Defendants and $4,500 to Defendant Beary.

## III. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendants Rule 11 Motions are **PARTIALLY GRANTED** and **PARTIALLY DENIED** as set forth in this order.

New Orleans, Louisiana, this 12th day of September, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE